# Bynum *v.* Southern Pump and Pipe Company.

*Detinue for Mule.*

1. *Declarations of agent; admissibility against principal.*—The declarations or statements of an agent, having authority only to demand and receive from the defendant the property sued for, made to third persons, after a refusal to deliver by the defendant, in derogation of the title of plaintiff, his principal, are not competent evidence against plaintiff.

2. *Exception to exclusion of evidence.*—An exception to the exclusion of evidence can not be sustained, when the nature or substance of the excluded evidence is not so set out as to show error on the part of the court, or prejudice to the party excepting.

3. *Charge tending to confuse or mislead.*—Where two witnesses testify as to the contents of a writing, which is not produced, and their testimony is conflicting, the court may properly refuse a charge which, in effect, would proba-

VOL. LXIII.

[Bynum v. Southern Pump and Pipe Co.]

bly produce on the minds of the jury the impression that they should give greater weight to one than to the other.

4. *Exception to additional charge to jury.*—An exception to additional instructions to the jury, given by the court on their returning an incomplete verdict, must be taken before the jury retire again, and comes too late after they have brought in their final verdict.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. LOUIS WYETH.

This action was brought by Henry F. Temple and Joseph F. Shipp, as partners under the firm name of "Southern Pump and Pipe Company," against Benjamin F. Bynum, to recover a mule, together with damages for its detention; and was commenced on the 8th January, 1877. It appeared from the evidence adduced on the trial, as set out in the bill of exceptions, that the plaintiffs conducted their business in Chattanooga, Tennessee; and that one McKendree, under whom defendant derived title to the mule, was engaged, during the years 1875 and 1876, in selling their pumps throughout Jackson county, under a written agreement between them, which was made an exhibit to the deposition of said Shipp, taken on the part of plaintiffs. In his answer to the 5th interrogatory, said Shipp testified: "The said McKendree did have in his possession a wagon and team belonging to us, which he leased, and took possession of, January 13, 1875. He remained in possession until May, 16, 1876, when we sent a man to his house after the wagon and team, and, to our surprise, he came back without the property. The contract, under which he obtained possession of the mules and wagon, was in writing, and is in the possession of our attorneys, Messrs. Hunt & Tally, and will be exhibited on the trial of this cause." One of said attorneys testified on the trial, "that said contract was in fact placed in their hands by said Shipp, but the same had been lost, and witness could not undertake to state its contents." In reference to this contract, McKendree, whose deposition was taken on the part of the defendant, thus testified: "I obtained the mule from a gentleman representing himself to be, as I remember, J. F. Temple, who delivered me the mules, wagon, and fixtures, to work for the said company, with the understanding that I was to pay $500 for the whole; but, if I failed to do so, I was to pay a stipulated price per month—$30, I think, was the amount agreed on." "I had the mule in my possession, with the privilege of purchasing, and had, as I understood from Mr. Shipp, who, I was told, was the owner of the mules, the privilege of disposing of them, if I saw proper; the impression being made upon me, by them, that there would be no doubt I would be able to meet all

liabilities, as I was doing at the time a prosperous business." It appeared that McKendree had never paid for the wagon and team, but he traded the mule now sued for to one Dean, for a stallion, which died a short time afterwards; and Dean, after keeping the mule twelve months, sold it to the defendant.

"In the progress of the cause, plaintiffs introduced as a witness Samuel H. McMahan, sheriff, &c., who testified, that he had in his possession, for collection, a lot of notes belonging to the plaintiffs; that one Whitesides, representing plaintiffs, came to him with the receipt he had given for the notes, and witness paid him the money he had collected on the notes; that he went with said Whitesides, at his request, to see the defendant, who had the mule; that Whitesides claimed the mule, as the property of plaintiffs, and defendant insisted on his right to retain it under his purchase from Dean; that Whitesides left defendant without obtaining the mule; that subsequent to this, and before the commencement of this suit (it appeared on cross-examination of said witness), witness had held repeated conversations with said Whitesides, in regard to plaintiffs' right to the mule, while said Whitesides was seeking to procure the surrender of the mule from the defendant; and that Whitesides was the person who instituted this suit for the plaintiffs. Witness having stated that Whitesides had made declarations or statements to him, touching the matter of plaintiffs' and said McKendree's right to the mule, defendant sought to introduce the same as evidence for him; but plaintiffs objected, and the court sustained the objection, and declined to permit the introduction of the statements of said Whitesides as evidence in this cause. To the refusal of the court to permit the defendant to prove admissions or declarations of said Whitesides, in disparagement of plaintiffs' right to the mule, defendant objected and excepted, as improper and prejudicial to him under the facts and circumstances of the case as then shown."

The bill of exceptions concludes thus: "This was all the evidence in the case; and on this statement of the facts, the court charged the jury, generally, the law applicable to the case; and no exceptions were reserved to the charge. Defendant then requested the court to charge the jury, in writing, as follows: 'If the jury find, from the evidence, that the contract in regard to the mule was in writing, and that the writing has been lost, then it was incumbent on the plaintiffs to show the contents of said writing; and in its absence, or in the absence of the proof of the contents, it is right that the jury should look to the evidence in this case; and if they

find one sole witness as to the contract of sale, then they will be authorized to look to that evidence.' The court refused to give this charge to the jury, and the defendant excepted to its refusal."

" The jury returned, in the first instance, a verdict in substance as follows : ' We, the jury, find for the plaintiffs, and assess their damages to one hundred dollars.' The court then instructed them, that in this action, if they found for the plaintiffs, their verdict should assess the value of the mule, and such damages for the detention as they thought right. The jury then retired, and soon returned with a verdict," finding the issue in favor of the plaintiffs, assessing the value of the mule at one hundred dollars, and the damages for its detention at ten dollars." "After the jury had rendered this verdict, one of the defendant's counsel remarked, that he desired the court to take notice that he excepted to the instructions given to the jury as above stated ; to which the court replied, that he desired the counsel to take notice that no exception was made to the instructions until after the jury had returned their verdict."

The several rulings of the court to which, as above shown, exceptions were reserved by the defendant, are now assigned as error.

ROBINSON & BROWN, with WATTS & SONS, for appellants.

HUNT & TALLY, and J. C. COULSON, contra.

MANNING, J.—There was no error in the refusal of the court to permit the conversations of Whitesides to be introduced, in regard to the right of plaintiffs to the mule sued for. Whitesides was, apparently, only an agent to demand and get the mule for plaintiffs, from the defendant. This was not such a relation as authorized proof to be made of what he had said in conversations with others, of the claim of plaintiffs, if he had said any thing in derogation of their right of property. Nor does it seem to have been indicated to the court, what it was supposed to have been said by Whitesides, that it was proposed to prove. It does not, therefore, appear that defendant was prejudiced by the exclusion of the testimony, or that the court erred in excluding it. The proposed examination, so far as is shown, may have been merely a "fishing" for evidence that did not exist.

According to the bill of exceptions, " the court charged the jury, generally, the law applicable to the case ; and no exceptions were reserved to the charge." But the judge

[Couch v. Woodruff.]

refused to charge, at the request of defendant, "If the jury find, from the evidence, that the contract in regard to the mule was in writing, and that the writing had been lost,·then it was incumbent on the plaintiffs to show the contents of said writing; and in its absence, or in the absence of the proof of the contents, it is right that the jury should look to the evidence in this case; and if they find one sole witness as to the contract of sale, then they will be authorized to look to that evidence." The fault of this charge is, that it would tend to confuse the jury. It would be their duty to look to all the evidence before them, whether the supposed contract was lost, or its contents proved, or not proved. But the impression the instruction asked would have probably made, is that, if the plaintiffs' witness, Shipp, in his evidence, that by the written contract there was only a hiring of the mules and wagon to McKendree, and according to McKendree's testimony, there was, besides, a conditional contract of sale, they must give the greater weight to McKendree's testimony. This would have been error, and the court did right in refusing it.

If there was any error in the instruction of the court to the jury, when they returned the first time, with an incomplete verdict, that they should complete it, by a finding in respect to damages for the detention of the mule, no objection, or exception, was then made to that instruction, and it is not therefore subject to revision here.

Let the judgment be affirmed.